# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

AMERICAN HOME ASSURANCE
COMPANY, *et al*.,

      Plaintiffs,

v.

PERINI BUILDING COMPANY, INC.,

      Defendant.

Case No. 2:11-CV-1218-KJD-CWH

**ORDER**

Presently before the Court is Defendant's Motion to Dismiss (#10).  Plaintiffs filed a response in opposition (#11) to which Defendant replied (#12).  Also before the Court is Defendant's Motion to Abstain (#25/26).  Plaintiffs filed a response in opposition (#37) to which Defendant replied (#39).  Plaintiffs' Motion to Strike (#27) is denied as moot pursuant to the Court's Order (#29).

I.  Background

On July 28, 2011, Plaintiffs American Home Assurance Company ("American") and Lexington Insurance Company ("Lexington") filed this action against Perini Building Company, Inc. seeking a declaration as to Plaintiffs' coverage obligations, if any, to Perini with respect to an action pending in Clark County, Nevada District Court (the "Underlying Action") arising out of alleged

construction defects at Project City Center ("the Project").  Specifically, Plaintiffs seek a declaration that: (1) Plaintiffs have no duty to defend Perini in connection with the claims made against it in the Underlying Action; (2) Plaintiffs have no duty to indemnify Perini in connection with the claims made against it in the Underlying Action; and (3) Perini must reimburse American for any fees or costs that American reimbursed Perini and/or paid on Perini's behalf in connection with Perini's defense of claims made against it in the Underlying Action.

Perini served as the general contractor responsible for the Project's construction.  The Project is comprised of numerous buildings including the Harmon Tower ("the Harmon") which was planned at forty-seven (47) stories and located on the corner of Las Vegas Boulevard and Harmon Avenue.  Perini subcontracted the Harmon's reinforcing steel work out to Century Steel, Inc. ("Century") (which contract was assumed by Pacific Coast Steel ("PCS") after PCS purchased Century's assets), and subcontracted the concrete form work out to Ceco Concrete Construction, LLC ("CECO")(collectively "the Subcontractors").  Under the construction agreement, Perini and its subcontractors were required to apply for coverage under the same Owner Controlled Insurance Policy ("OCIP").

As alleged in the Underlying Action, pervasive construction defects were first discovered at the Harmon in approximately June 2008.  In particular, it is alleged that "Perini and ... Century and PCS had defectively installed reinforcing steel in the Harmon."  Work on the Harmon was halted for testing, and "it was determined that there was substantial defective construction, including defective installation of reinforcing steel throughout the Harmon."  Ultimately, work on the Harmon was "indefinitely stopped" after further investigations detected "structural defects in other components of the Harmon, including without limitation the shear walls, link beams below the 6th floor, and several critical beam-to-column and slab-to-beam connections."  These are the primary alleged defects at the center of the Underlying Action.

Separately, Perini, Century, PCS and CECO sought coverage from Plaintiffs for claims made against them in connection with the allegedly defective work performed at the Project.  Plaintiffs

1   issued separate coverage position letters as to each party.  American, which issued the primary-layer

2   OCIP policies for the project, agreed to defend Perini and each of the Subcontractors in the

3   Underlying Action under a reservation of rights.  Plaintiffs now seek to have this Court declare that

4   no duty to defend or indemnify exists under the terms of the OCIP.  Defendant Perini has moved to

5   dismiss the action for failure to join required parties and, in the alternative, to abstain from exercising

6   jurisdiction over this action.

7   II.  Motion to Dismiss for Failure to Join a Required Party

8          Defendant Perini filed its motion to dismiss pursuant to Federal Rule of Civil Procedure

9   12(b)(7) for failure to join an indispensable party.  "The framework for determining whether a party

10  is necessary and indispensable is provided by Fed. R. Civ. P. 19(a)."  Am. Greyhound Racing, Inc. v.

11  Hull, 305 F.3d 1015, 1022 (9th Cir. 2002).  A party is necessary within the meaning of Rule 19 if:

12          (A)   in that person's absence, the court cannot accord complete relief among existing
              parties; or
13
14          (B)   that person claims an interest relating to the subject of the action and is so situated
              that disposing of the action in the person's absence may:

15                  (i)   as a practical matter impair or impede the person's ability to protect the
                      interest; or
16
17                  (ii)  leave an existing party subject to a substantial risk of incurring double,
                      multiple, or otherwise inconsistent obligations because of the interest.

18  Fed. R. Civ. P. 19(a)(1); See Pit River Home & Agr. Co-op. Ass'n v. United States, 30 F.3d 1088,

19  1099 (9th Cir. 1994)("Based on Rule 19(a), we evaluate whether (1) complete relief is possible

20  among existing parties and (2) the absent party has a legally protected interest in the outcome of

21  litigation.").

22          Despite Perini's claim that the Court cannot afford complete relief among existing parties

23  without the presence of the Subcontractors, the Court finds that it can make a specific determination

24  of Plaintiffs' duties to Perini which are separate and distinct from those of the Subcontractors.  See,

25  generally, In re Chinese Mfd. Drywall Prods. Liab. Litig., 273 F.R.D. 380, 381-83 (E.D. La.

26  2011)(though not squarely on point as alleged by Plaintiffs, holding that declaration of specific rights

1  of named insureds rather than general declaration of coverage may proceed in absence of

2  subcontractors); Brown v. Am. Int'l Group, Inc., 339 F. Supp.2d 336, 342-43 (D. Mass.

3  2004)(declaration of insurers' specific duties rather than general duties does not require presence of

4  other insureds).

5        Additionally, the Subcontractors have not claimed an interest in the subject matter of the

6  action as required by Rule 19(a)(1)(B)(i).  The closest that it can be argued that a Subcontractor has

7  come to claiming an interest in this case is PCS' action filed in state court in California against

8  Plaintiffs seeking a determination of their rights under the insurance contract.  However, that action

9  is stayed pending resolution of the Underlying Action.

10        Furthermore, the absence of the Subcontractors does not risk that the Court's ruling will have

11  an impact on any determination that the Subcontractors' work was done negligently or intentionally

12  as argued by Perini.  See Huber v. Taylor, 532 F.3d 237, 250 (3d Cir. 2008)(rejecting argument that

13  absent party must be joined because outcome of lawsuit may have some kind of preclusive effect in

14  future litigation); Treasury Solutions Holdings, Inc. v. Upromise, Inc., 3:10-cv-00031-ECR-WGC,

15  2010 WL 5390134, *7 (D. Nev. 2010)("the mere fact that a judgment ... may serve as 'persuasive

16  precedent' for any potential suit" involving the absent party is insufficient to require joinder).  The

17  Court's determination as to whether Perini is entitled or not to coverage under the policies would not

18  be binding upon the Subcontractors, because they cannot be bound by a judgment in an action to

19  which they are not a party.  Mpoyo v. Litton Electrc-Optical Sys., 430 F.3d 985, 987 (9th Cir. 2005).

20        Finally, there is little concern that parties will be subject to double, multiple and/or

21  inconsistent obligations.  In the Ninth Circuit, "inconsistent obligations occur when a party is unable

22  to comply with one court's order without breaching another court's order concerning the same

23  incident.  Inconsistent adjudications, or results, by contrast occur when a defendant successfully

24  defends a claim in one forum, yet loses another claim arising from the same incident in another

25  forum." Cachil Dehe Band of Wintun Indians v. Cal., 547 F.3d 962, 976 (9th Cir. 2008).  The risk

26  that Plaintiffs may be found liable to provide coverage to some insureds and not others does not

4

1    justify the requirement that all parties be joined in this action.  See <u>A.J. Kellos Constr. Co. v. Balboa</u>

2    <u>Constr. Co.</u>, 495 F. Supp. 408, 414 (S.D. Ga. 1980)("prejudice to the plaintiff is rarely a

3    consideration since the plaintiff has elected the forum and the parties").  Therefore, the Court finds

4    that the Subcontractors are not required parties and denies Defendant's motion to dismiss under Rule

5    12(b)(7).

6    <u>III.  Motion to Abstain</u>

7           Defendant also argues that the Court should abstain from exercising jurisdiction over this

8    action and either dismiss or stay the case until the Underlying Action is resolved, because the issues

9    involved in the present litigation overlap with the Underlying Action.  The Declaratory Judgment Act

10   ("DJA") provides in pertinent part, "any court of the United States, upon the filing of an appropriate

11   pleading, may declare the rights and other legal relations of any interested party seeking such

12   declaration."  28 U.S.C. § 2201(a).  A federal court has substantial discretion when deciding whether

13   to exercise jurisdiction over a declaratory action pursuant to the DJA.  <u>See</u>, <u>e.g.</u>, <u>Wilton v. Seven</u>

14   <u>Falls Co.</u>, 515 U.S. 277, 282-283, 115 S.Ct. 2137, 2140 (1995); <u>Brillhart v. Excess Ins. Co. of Am.</u>,

15   316 U.S. 491, 494-95, 62 S.Ct. 1173, 1175 (1942); <u>Huth v. Hartford Ins. Co. of the Midwest</u>, 298

16   F.3d 800, 802 (9th Cir. 2002).   This discretion, however, is not limitless.  <u>See Huth</u>, 298 F.3d at 803.

17   The district court cannot be arbitrary or use personal whim when deciding whether to grant or deny

18   jurisdiction over the declaratory action.  <u>See id</u>.

19          The primary factors district courts consider when exercising discretion under the DJA were

20   laid out by the Supreme Court in <u>Brillhart</u>.  <u>See id</u>.  The district court should 1) avoid needless

21   determinations of state law; 2) discourage the filing of declaratory actions as a means of forum

22   shopping; and 3) avoid duplicative litigation.  <u>See id</u>.  These factors are not necessarily exhaustive.

23   <u>Id</u>. The Ninth Circuit also suggests other factors for district courts to consider.[1] In this case, the

24   _____

25         [1]The suggested factors are: 1) whether the declaratory action will settle all aspects of the dispute; 2) whether the
     declaratory action will serve a useful purpose in clarifying the legal relations at issue; 3) whether the declaratory action is

26   being brought solely for procedural fencing or a res judicata advantage; 4) whether the declaratory action will result in
     entanglement between federal and state court systems; and 5) the convenience of the parties and the availability and

1    consideration of the primary Brillhart factors and the additional Dizol factors favor the Court

2    exercising jurisdiction, but staying the action until the Underlying Action is resolved.

3          The avoidance of needless determinations of state law favors Defendant.  The traditional rule

4    is that states have a free hand in regulating the dealings between insurers and their policyholders.

5    See Emp'rs Reinsurance Corp. v. Karussos, 65 F.3d 796, 799 (9th Cir. 1995) (quoting SEC v. Nat.

6    Sec., 393 U.S. 453, 459, 89 S.Ct. 564, 568 (1969)).  As the Sixth Circuit noted when declining to

7    exert jurisdiction, "states regulate insurance companies for the protection of their residents, and state

8    courts are best situated to identify and enforce the public policies that form the foundation of such

9    regulation."  Allstate Ins. Co. v. Mercier, 913 F.2d 273, 279 (6th Cir. 1990).  While there is no

10   presumption of abstention from jurisdiction by district courts in disputes involving insurance

11   companies, this lack of a presumption against jurisdiction does not mean that there is a presumption

12   in favor of district courts retaining jurisdiction.  See Huth, 298 F.3d at 803.

13         While the declaration of obligations under an insurance policy may be the "paradigm

14   situation" for declaratory relief, there is nothing to hint that this "paradigm situation" is the

15   declaration of those obligations in federal court.  Nat. Chiropractic Mutual Ins. Co. v. Doe, 23 F.

16   Supp.2d 1109, 1114 (D. Alaska 1998).  In Doe, the court's analysis under the factors pointed

17   towards exercising jurisdiction over the declaratory action; however, the court stayed the proceeding

18   in federal court until the underlying tort action was decided.  See id. at 1124.

19         The avoidance of duplicative litigation factor presently favors Plaintiffs.  The Ninth Circuit

20   has held that if there is a parallel state proceeding involving the same issues and parties as the

21   proceeding in federal court, there is a presumption that the whole suit should be heard in state court.

22   See Dizol, 133 F.3d at 1225. Here, despite constant statements by Defendant that it is about to file a

23   declaratory action in state court seeking coverage, it still has not done so.  However, the absence of a

24   parallel state court action does not dictate that the district court exercise jurisdiction over the

25   ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

26   convenience of other remedies.  See Gov't Employees Ins. Co. v. Dizol, 133 F.3d 1220, 1225 (9th Cir. 1998) (quoting
     Am. States Ins. Co. v. Kearns, 15 F.3d 142, 145 (9th Cir. 1994) (Garth, J., concurring)).

1   declaratory action in federal court.  See Polido v. State Farm Mutual Auto. Ins. Co., 110 F.3d 1418,

2   1423 (9th Cir. 1997) (overruled on other grounds by Dizol, 133 F.3d 1220).

3           Moreover, the fact that the federal and state court actions do not entail the same issues or

4   parties is not dispositive.  See id.(citing Karussos, 65 F.3d at 800).  There needs only to be an

5   "overlap of factual questions" and an available "procedural vehicle" in state court to resolve the

6   issues to be raised in the federal action.  See id.

7           The factor discouraging forum shopping favors Defendant.  After PCS filed a declaratory

8   action in California state court, Plaintiffs successfully argued that action should be stayed until

9   resolution of the Underlying Action.  Plaintiffs then filed the present declaratory action against

10  Perini in federal court in Nevada six months later.  Though the action in California did not involve

11  Perini, it did involve the same issue: coverage under the OCIP.  Furthermore, the actions involve

12  duplicative litigation to the extent that the dispute between Plaintiffs and Perini not only involves

13  state insurance law, but may also involve state law public policy issues.  Moreover, the fact that

14  there are overlapping factual issues in this action and the Underlying Action and an available

15  procedural avenue in state court favors Perini.

16          In this action, the dispute between Perini and Plaintiffs entails interpreting the insurance

17  policies and determining if Perini is covered under the facts alleged in the Underlying Action, thus

18  allowing Perini to qualify for defense and indemnification by Plaintiffs in the Underlying Action.

19  These insurance policies apply to a state court construction defect action currently pending in Clark

20  County District Court.  Considering the complexity of construction defect actions and the magnitude

21  of the Underlying Action, the state has a significant interest in having the issues that will be decided

22  by this action litigated in the state court system.  The state court is in the best position not only to

23  determine the substantive insurance law to apply, but also to determine the public policy issues

24  underlying the application of the provisions of the insurance policies as they relate to Perini and the

25  Subcontractors.  The Court's analysis under the Brillhart factors favors the court using its discretion

26  to not exercise jurisdiction over this declaratory action.

7

1    However, given that Perini has still failed to file its oft threatened state court declaratory

2  judgment action, the Court finds that exercising jurisdiction and staying the action until the

3  Underlying Action has been resolved is the most prudent course of action.  This litigation would be

4  useful in clarifying the legal relationships of the parties.  It also gives Plaintiffs an adequate forum

5  for their claims to be heard fairly without the fear that the Underlying Action would be settled solely

6  on the out-of-state insurers' backs.  Finally, staying the action will avoid entanglement with the state

7  court litigation as parties position to try to avoid legal arguments or fact discovery that may have a

8  preclusive or estoppel effect in resolving the present coverage claims or the tort and conctract claims

9  in the Underlying Action.  Thus, the Court grants Defendant's motion to abstain by assuming

10  jurisdiction of the case, but staying the proceedings until the Underlying Action is resolved.

11  IV.  Conclusion

12    Accordingly, IT IS HEREBY ORDERED that Defendant's Motion to Dismiss (#10) is

13  **DENIED**;

14    IT IS FURTHER ORDERED that Defendant's Motion to Abstain (#25/26) is **GRANTED**;

15    IT IS FURTHER ORDERED that this action is **STAYED**.

16    DATED this 3rd day of February 2012.

19  _____

20  Kent J. Dawson
    United States District Judge